[No. 17061-9-I. Division One. December 30, 1987.]

MODERN SUPPLY COMPANY, *Appellant,* v. FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, *Respondent.*

*Suzanne Kelly Michael* and *Tewell, Thorpe & Findlay, Inc., P.S.,* for appellant.

*John D. Alkire, Joseph E. Bringman,* and *Perkins Coie,* for respondent.

SWANSON, J.—Modern Supply Company (Modern Supply) commenced an action in the superior court for money due, lien foreclosure and replevin against, among others, Four Star Investments and South Terrace Corporation (STC), Washington corporations; and Westside Federal Savings and Loan Association, now replaced in this appeal by the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for Westside.

Following the entry of an order granting Westside's summary judgment motion and denying Modern Supply's cross motion for summary judgment, Modern Supply appeals, claiming that the merchandise that it sold to Four Star is personalty, not fixtures, so that the trial court erred in declaring that Westside's security interest in the subject

collateral is superior to Modern Supply's interest in the same collateral and that Westside is the owner of the collateral. The FSLIC moves for dismissal of this appeal, without prejudice to Modern Supply's pursuit of administrative remedies, based upon sovereign immunity,[1] lack of subject matter jurisdiction, and failure to exhaust administrative remedies.

Westside entered into a loan agreement with STC for the construction of condominiums on STC–owned real property. The $1,520,000 loan to STC was evidenced by a note secured by a deed of trust, assignment of rents and leases, and security agreement. On February 28, 1983, Westside recorded the deed of trust, which granted Westside a security interest in both the real estate and all present and future improvements, fixtures and articles of property attached to or used or adapted for use in the operation of the premises, including but not limited to such things as ranges, refrigerators, cooking apparatus and mechanical kitchen equipment which, according to the deed of trust, were deemed to be part of the realty.

On February 28, 1983, Westside filed with the King County auditor a Uniform Commercial Code (UCC) financing statement covering fixtures, and on March 18, 1983, it filed with the Department of Licensing in Olympia a UCC financing statement covering personal property. Both financing statements name STC as the debtor.

On June 8, 1983, Four Star entered into a contract with Modern Supply whereby for $45,166.24, Modern Supply was to furnish upon certain premises, which were STC's condominiums, drop–in ranges, dishwashers, refrigerators, 30–inch canopy hoods, ductless filter kits, and trash compactors. On April 22, 1983, Four Star had executed a security agreement granting Modern Supply a security interest in all goods sold by Modern Supply to Four Star. Delivery

[1] In light of our resolution of this case, we find it unnecessary to address the FSLIC's sovereign immunity argument.

of the goods began on September 8, 1983, and was completed by October 20, 1983.

On January 13, 1984, Modern Supply filed a claim of lien upon Four Star's nonpayment. On March 28, 1984, Modern Supply filed with the King County auditor a UCC financing statement covering the goods sold to Four Star, and on November 15, 1984, Modern Supply filed with the Department of Licensing a UCC financing statement covering the same goods. When STC defaulted on its loan, Westside commenced nonjudicial foreclosure under the deed of trust, purchased the real property at the trustee's sale, and filed the trustee's deed on October 2, 1984.

On September 11, 1984, Modern Supply filed this action. The trial court granted summary judgment in Westside's favor and denied Modern Supply's cross motion for summary judgment and subsequent motion for reconsideration. Following Modern Supply's appeal of the summary judgment order, the Federal Home Loan Bank Board appointed the FSLIC as Westside's receiver upon Westside's insolvency, and the FSLIC was substituted for Westside as the respondent in this appeal. A commissioner's ruling referred the FSLIC's motion to dismiss this appeal for lack of jurisdiction to the panel hearing the case on the merits.

The dispositive issue is whether this appeal must be dismissed without prejudice due to a lack of subject matter jurisdiction. We so hold.

12 U.S.C. § 1464(d)(6)(C) (1982), which was made applicable in receiverships of state thrift institutions by the Bank Protection Act of 1968, 12 U.S.C. §§ 1729, 1881–84 (1982), has been quoted as follows:

> Except as otherwise provided in this subsection, no court may . . ., except at the instance of the [FHLBB], restrain or affect the exercise of powers or functions of a conservator or receiver.

*North Miss. Sav. & Loan Ass'n v. Hudspeth,* 756 F.2d 1096, 1101 (5th Cir. 1985), *cert. denied,* 474 U.S. 1054 (1986).

12 U.S.C. § 1729(d) (1982) was quoted in *North Miss.* as follows:

> In connection with the liquidation of insured institutions, the [FSLIC] shall have power . . . to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board. . . .

*North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1101.

The FSLIC has moved to dismiss the instant appeal based upon this court's lack of subject matter jurisdiction in light of the above federal statutes and the case law which, the FSLIC contends, require Modern Supply to exhaust its administrative remedies before seeking relief from a court. Modern Supply argues that the state court has jurisdiction here under 12 U.S.C. § 1730(k)(1), which vests in the federal district courts, with an exception not applicable here, original jurisdiction over disputes involving the FSLIC, and that section 1464(d)(6)(C) is limited to an action challenging the validity of a receiver's appointment or a receiver's actions in discharging its duties, which is not the case here.

The federal circuit courts of appeals which have addressed the question are divided as to whether the FSLIC has exclusive jurisdiction to adjudicate claims against the assets of an insolvent savings and loan association placed in an FSLIC receivership. The Fifth Circuit has held that it does, the Ninth Circuit has held that the FSLIC has no power to adjudicate creditor claims,[2] and the Seventh Circuit, which did not decide whether the FSLIC

---

[2] A clear majority of the cases have followed the Fifth Circuit's ruling in *North Miss. Sav. & Loan Ass'n v. Hudspeth,* 756 F.2d 1096 (5th Cir. 1985), *cert. denied,* 475 U.S. 1054 (1986).

Several federal courts have declined to follow the Ninth Circuit's decision in *Morrison–Knudsen Co. v. CHG Int'l, Inc.,* 811 F.2d 1209 (9th Cir. 1987), *petition for cert. filed sub nom. Federal Sav. & Loan Ins. Corp. v. Stevenson Assocs.,* 56 U.S.L.W. 3249 (U.S. Oct. 6, 1987) (No. 87–451). *E.g., Coit Independence Joint Venture v. Firstsouth, F.A.,* 829 F.2d 563 (5th Cir. 1987); *York Bank & Trust Co. v. Federal Sav. & Loan Ins. Corp.,* 663 F. Supp. 1100 (M.D. Pa. 1987); *Acquisition Corp. of Am. v. Sunrise Sav. & Loan Ass'n,* 659 F. Supp. 138 (S.D. Fla. 1987); *Federal Sav. & Loan Ins. Corp. v. Oldenburg,* 658 F. Supp. 609 (D. Utah 1987).

is empowered to adjudicate claims since the question had neither been argued nor briefed in that case, proceeded on the assumption that the FSLIC has such power and essentially adopted the Fifth Circuit's reasoning and conclusions. *Lyons Sav. & Loan Ass'n v. Westside Bancorporation, Inc.,* 828 F.2d 387 (7th Cir. 1987); *Morrison–Knudsen Co. v. CHG Int'l, Inc.,* 811 F.2d 1209, 1212 (9th Cir. 1987), *petition for cert. filed sub nom. Federal Sav. & Loan Ins. Corp. v. Stevenson Assocs.,* 56 U.S.L.W. 3249 (U.S. Oct. 6, 1987) (No. 87–451); *North Miss. Sav. & Loan Ass'n v. Hudspeth,* 756 F.2d 1096, 1102 n.5, 1103 (5th Cir. 1985), *cert. denied,* 475 U.S. 1054 (1986).

■ Where the lower federal courts are divided on a federal question such as the interpretation of federal statutes and the United States Supreme Court has not resolved the conflict, the state courts are free to decide the question for themselves. 21 C.J.S. *Courts* § 206, at 377–78 (1940 & Supp. 1987); *Home Ins. Co. v. Northern Pac. Ry.,* 18 Wn.2d 798, 808, 140 P.2d 507, 147 A.L.R. 849 (1943); *accord, Tropic Builders, Ltd. v. United States,* 52 Hawaii 298, 475 P.2d 362, 365 (1970); *Robertson Lumber Co. v. Progressive Contractors, Inc.,* 160 N.W.2d 61, 69 (N.D. 1968), *appeal dismissed, cert. denied,* 394 U.S. 714 (1969). *But see Fleming v. Smith,* 64 Wn.2d 181, 184–85, 390 P.2d 990 (1964). We find the reasoning of the *Hudspeth* line of cases to be persuasive and adopt that reasoning as our own.

In *North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1101–03, the Fifth Circuit Court of Appeals held that under sections 1464(d)(6)(C) and 1729(d), a claimant against a failed savings and loan association which had been placed within the FSLIC's receivership must first present its claims to the FSLIC, subject to initial review by the Federal Home Loan Bank Board (FHLBB), and judicial review under the administrative procedure act (APA), 5 U.S.C. §§ 701–706 (1982 & Supp. 1986). *Accord, Coit Independence*

---

*Contra, Federal Sav. & Loan Ins. Corp. v. Provo Excelsior Ltd.,* 664 F. Supp. 1405 (D. Utah 1987).

*Joint Venture v. Firstsouth, F.A.,* 829 F.2d 563 (5th Cir. 1987); *York Bank & Trust Co. v. Federal Sav. & Loan Ins. Corp.,* 663 F. Supp. 1100 (M.D. Pa. 1987); *Acquisition Corp. of Am. v. Sunrise Sav. & Loan Ass'n,* 659 F. Supp. 138 (S.D. Fla. 1987); *Federal Sav. & Loan Ins. Corp. v. Oldenburg,* 658 F. Supp. 609 (D. Utah 1987); *First Fin. Sav. & Loan v. Federal Sav. & Loan Ins. Corp.,* 651 F. Supp. 1289, 1291 (E.D. Ark. 1987); *Federal Sav. & Loan Ins. Corp. v. Quality Inns, Inc.,* 650 F. Supp. 918 (D. Md. 1987); *Keller v. Antioch Sav. & Loan Ass'n,* 143 Ill. App. 3d 278, 492 N.E.2d 937, 940 (1986); *Federal Sav. & Loan Ins. Corp. v. Superior Court,* 180 Cal. App. 3d 336, 225 Cal. Rptr. 422, 425 (1986), *cert. denied,* 107 S. Ct. 949 (1987).

In *North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1099–1100, the savings and loan association had filed an action in state court seeking a declaratory judgment that a deferred compensation agreement with its former president, Joseph Hudspeth, either did not exist or was terminable, and Hudspeth counterclaimed for specific performance or damages for breach of contract. The savings and loan association subsequently was declared insolvent, and upon its appointment as receiver, the FSLIC terminated the compensation contract. Upon the removal of the case to federal district court, the FSLIC's motion to dismiss was granted.

The Fifth Circuit Court of Appeals affirmed the dismissal after examining sections 1464(d)(6)(C) and 1729(d) in light of the congressional intent which the court determined was to permit "the FSLIC [when acting in its receivership capacity] to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution . . ." without interference by other judicial or regulatory authorities. *Hudspeth,* at 1101. According to *Hudspeth,*

> resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets: the FSLIC would not be able to determine how much to pay other claimants until the termination of the parallel litigation.

Given the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver, such a delay is a "restraint" within the scope of the statute.

*Hudspeth,* at 1102.

The *Hudspeth* court stated that its conclusion was fortified by the FHLBB regulations, under which the FSLIC gives notice to creditors to present their claims and then may disallow claims not proven to its satisfaction, with its decisions to disallow claims subject to FHLBB review, 12 C.F.R. §§ 569a.8, 549.4 (1984). *Hudspeth* states that this administrative process expedites the resolution of the receivership proceedings, consonant with the congressional purpose. Moreover, these regulations reflect the view of the FHLBB, the enforcing agency for the relevant banking statutes, that the FSLIC has the power to decide claims in carrying out its receivership duties, and this opinion is entitled to the court's deference, *Chevron, U.S.A. Inc. v. Natural Resources Defense Coun., Inc.,* 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778, 2782–83 (1984). *North Miss. Sav. & Loan Ass'n v. Hudspeth,* at 1102–03.

The *Hudspeth* court concluded that the FSLIC's termination of the compensation contract with the former president was an exercise of the FSLIC's powers as a receiver and as such was subject to a challenge before the FHLBB. If still unsatisfied, Hudspeth could seek judicial review under the APA. *Hudspeth,* at 1101–03.

Other courts which have adopted *Hudspeth*'s ruling have noted that deferring to the complex regulatory scheme set forth by Congress is in harmony with the congressional intent to facilitate the speedy liquidation of failed savings and loan associations, and that it is not for the courts to frustrate this administrative process. *E.g., Federal Sav. & Loan Ins. Corp. v. Quality Inns, Inc., supra* at 918, 922; *Keller v. Antioch Sav. & Loan Ass'n, supra; Federal Sav. & Loan Ins. Corp. v. Superior Court, supra.* In the instant case Modern Supply's claim against FSLIC receivership assets must first be presented to the FSLIC, subject to

FHLBB review and then judicial review. *North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1103.

Modern Supply argues that state court jurisdiction here stems from 12 U.S.C. § 1730(k)(1) (1982), which provides in part:

> Notwithstanding any other provision of law, (A) the Corporation [the FSLIC] shall be deemed to be an agency of the United States within the meaning of section 451 of Title 28; (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: *Provided,* That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State–chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States.

*North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1100.

With an exception which neither party argues is applicable here, section 1730(k)(1) confers upon the federal district courts original jurisdiction over civil actions in which the FSLIC is a party. *See North Miss. Sav. & Loan Ass'n v. Hudspeth, supra.* The unstated assumption underlying Modern Supply's argument is that if the federal district court has original jurisdiction here under section 1730(k)(1) over a case deemed to arise under the federal laws, the state court similarly has jurisdiction, *see Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–78, 69 L. Ed. 2d 784, 791, 101 S. Ct. 2870 (1981). Absent a contrary argument, we will proceed on that assumption.

■ However, even assuming so, if section 1730(k)(1) is interpreted to vest original jurisdiction in the federal district courts where a claim is brought against assets held in an FSLIC receivership, an irreconcilable conflict is created between this provision and section 1464(d)(6)(C), which prohibits a court from restraining or affecting a receiver's exercise of powers or functions. Statutory provisions should be interpreted to give effect to each while preserving their sense and purpose. *Watt v. Alaska,* 451 U.S. 259, 267, 68 L. Ed. 2d 80, 88, 101 S. Ct. 1673 (1981); *Snohomish Cy. PUD 1 v. Broadview Television Co.,* 91 Wn.2d 3, 8, 586 P.2d 851 (1978).

■ The two provisions can be harmonized if section 1730(k)(1)'s grant of federal jurisdiction is interpreted to be limited by section 1464(d)(6)(C). Thus a civil action in federal district court against the FSLIC in its capacity as receiver, which would "restrain or affect the exercise of powers or functions" of a receiver, is statutorily prohibited. The statutory scheme has the effect of placing on an administrative track suits against the FSLIC as receiver of failed savings and loan associations while other suits in which the FSLIC is a party may be maintained in federal district court. *First Fin. Sav. & Loan v. Federal Sav. & Loan Ins. Corp., supra* at 1290–91. The scheme thus fosters the expeditious liquidation of failed institutions consistent with the congressional purpose. *North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1101–02.

Moreover, the fact that Modern Supply's action was filed before Westside was placed in an FSLIC receivership is not significant. Hudspeth's counterclaim also was filed prior to the FSLIC's appointment as receiver. *North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1099; *Keller v. Antioch Sav. & Loan Ass'n,* 492 N.E.2d at 941. In *First Fin. Sav. & Loan v. Federal Sav. & Loan Ins. Corp.,* at 1290, the state court judge had rendered a letter opinion deciding claims against First South, F.A., but before the entry of judgment, the FSLIC, which had been appointed First South's

receiver, removed the case to federal district court and filed a motion to dismiss the case, which was granted.

In *Lyons Sav. & Loan Ass'n v. Westside Bancorporation, Inc.,* 636 F. Supp. 576, 581 (N.D. Ill. 1986), *aff'd,* 828 F.2d 387 (7th Cir. 1987), the district court stated that *Hudspeth's* holding did not rely upon the timing issue and that a basic law of federal jurisdiction is that at any time a court may find that it lacks subject matter jurisdiction and dismiss the case pending before it. In Washington a challenge to the court's jurisdiction may be raised at any time. RAP 2.5(a); *cf. Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 739–40, 47 L. Ed. 2d 435, 439, 96 S. Ct. 1202 (1976); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice* § 3522, at 69–72 (2d ed. 1984).

Modern Supply attempts to distinguish the instant case by asserting that Westside's claim here is more attenuated than those in the *Hudspeth* line of cases. However, the FSLIC as receiver is empowered to consider all claims against failed savings and loan associations placed in an FSLIC receivership, including claims for security. *Federal Sav. & Loan Ins. Corp. v. Superior Court,* 225 Cal. Rptr. at 426.

Further, Modern Supply's argument that the instant case is further distinguishable in that no action by a receiver is challenged here and its direct claim is against Four Star Investment, not the FSLIC, is not meritorious. In *Chupik Corp. v. Federal Sav. & Loan Ins. Corp.,* 790 F.2d 1269, 1269–70 (5th Cir. 1986), the failed savings and loan institution had first mortgage liens to secure its construction loans under deeds of trust, and Chupik Corporation, which had supplied construction materials, perfected its materialman's lien rights under Texas law when it was not paid for the materials supplied. The Fifth Circuit Court of Appeals upheld the district court's dismissal of Chupik's federal court action based upon the failure to exhaust administrative remedies when Chupik sought to foreclose upon its materialman's liens and to obtain a declaratory judgment regarding competing lien claims based upon Texas law after

foreclosure of the failed mortgagee's deeds of trust. The *Chupik* court emphasized that "resolution of even the facial merits of claims outside of the statutory reorganization process" is a "restraint" prohibited by section 1464, *North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1102.

The facts in *Chupik* are virtually indistinguishable from those in the instant case. Here Modern Supply's claim is effectively against receivership assets, and resolution of its claim outside the receivership proceedings would "restrain" and "affect" the FSLIC's functions as a receiver in contravention of the statutory prohibition. *Federal Sav. & Loan Ins. Corp. v. Quality Inns, Inc., supra* at 922.

Finally, while Modern Supply argues that it is unfair if the FSLIC is empowered to hear claims where its interests are adverse to the claimant's, the California Court of Appeal rejected a similar argument that the FSLIC should not be vested with the power to destroy valid liens in receivership liquidations. The California court concluded that even though American Savings and Loan Association's attachment would be discharged as a result of the court action's dismissal, the failure to dismiss the action before administrative remedies are exhausted would be an impermissible "restraint" of the receivership function and would frustrate the congressional intent to expedite liquidation and aid the FSLIC in maintaining its insurance reserves. *Federal Sav. & Loan Ins. Corp. v. Superior Court,* 225 Cal. Rptr. at 425–26. The California court noted that American's opportunity to gain a priority claim would not be lost but would merely be transferred to an administrative forum. *Superior Court,* 225 Cal. Rptr. at 426.

Similarly here although Modern Supply's claim is switched to the administrative track, it can challenge the FSLIC's actions before the FHLBB, and if unsatisfied, can seek judicial review under the APA. *North Miss. Sav. & Loan Ass'n v. Hudspeth, supra* at 1103. Since this court lacks jurisdiction to hear this appeal, the appeal is dismissed without prejudice and the case is remanded to the trial court with the direction to vacate the judgment below

and dismiss the case without prejudice to Modern Supply's right to pursue its claim through the administrative procedure.

COLEMAN, J., concurs.

WILLIAMS, J. (dissenting)—Four Star Investments built condominia under a contract with South Terrace Corporation. Financing was provided by Westside, with the loan being secured by a deed of trust on the real property, including fixtures. Modern Supply Company furnished appliances for the units, securing payment therefor by filing a financing statement with the appropriate agencies of the state. When neither Westside nor Modern Supply was paid in full each sought to foreclose its lien on the appliances/fixtures, with the trial court, on cross motions, declaring that Westside's lien claim was superior. After Modern Supply appealed to this court, Westside, being insolvent, was taken over by the Federal Savings and Loan Insurance Corporation as receiver, which moved to dismiss the appeal, contending that it has exclusive jurisdiction to adjudicate the lien claims against the appliances/fixtures. The majority agrees and grants the motion.

I disagree with that result primarily because the federal statutes do not give the FSLIC that power. The agency was formed in 1934 to guard against and deal with future failures in savings and loan associations and has two essential functions:

first, to monitor savings and loan associations for compliance with federal regulations; second, in cases of insolvency, to act as conservator or receiver. In the latter instances, the Board and FSLIC oust the officers previously in charge and take control of the association's assets and liabilities. FSLIC may attempt to set the association's affairs on a sound footing, to merge it with a solvent concern, or in extreme cases to liquidate the assets entirely.

*Morrison–Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1215 (9th Cir. 1987), *petition for cert. filed sub nom. Federal Sav. & Loan Ins. Corp. v. Stevenson Assocs.*, 56 U.S.L.W. 3249 (U.S. Oct. 6, 1987) (No. 87–451).

In its capacity as receiver, the FSLIC is protected from outside interference by 12 U.S.C. § 1464(d)(6)(C), which provides:

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the [Federal Home Loan Bank] Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

This statute does not grant adjudicatory power to the FSLIC. Rather, 12 U.S.C. § 1729 grants to the FSLIC, as receiver, the power:

> (b) . . .
>
> . . .
> (i) to take over the assets of and operate such association;
> (ii) to take such action as may be necessary to put it in a sound solvent condition;
> (iii) to merge it with another insured institution;
> (iv) to organize a new Federal association to take over its assets;
> (v) to proceed to liquidate its assets in an orderly manner; or
> (vi) to make such other disposition of the matter as it deems appropriate;
> whichever it deems to be in the best interest of the association, its savers, and the Corporation; . . .
>
> . . .
> (d) . . .
> . . . to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, . . .

These two sections give to the FSLIC the normal and

customary duties of a receiver; they do not invest that administrative agency with U.S. Const. art. 3 authority to adjudicate a property interest in litigation in which it is a party.

> Common law receivers have never in ordinary practice had the power to adjudicate claims; that power remains vested in the courts.

*Morrison–Knudsen Co.,* at 1219.

The agency can settle, compromise and release claims, but that is not to say that it can *adjudicate* those claims if it cannot reach agreed dispositions. A regulation authorizes the FSLIC to allow or disallow claims presented to it by creditors of the failed savings and loan association.

> Paying or refusing to pay, however, is not an adjudication of a claim. The language of the regulation does not purport to give FSLIC the power to enter conclusive factual and binding legal findings. FSLIC is no more an adjudicator under this regulation than is an insurance company authorized to "disallow" any claim not proved to its satisfaction and required to notify claimants thereof.

*Morrison–Knudsen Co.,* at 1218. Moreover,

> Settlement and compromise are to avoid that result. A body with the power to say "yes" or "no" with the force of law has much less need to settle or to compromise.

*Morrison–Knudsen Co.,* at 1219.

The type of action Congress anticipated the FSLIC would be a party to in state courts is stated in 12 U.S.C. § 1730(k)(1).

> The statute expressly includes an action against FSLIC "in its capacity as . . . receiver . . . which involves only the rights . . . of . . . creditors." There is no intimation that Congress intended to treat differently federally–chartered and state–chartered associations. Instead, there is every indication that Congress intended the agency's powers to be identical in both situations. *See, e.g.,* 12 U.S.C. § 1729(c) (granting FSLIC the "same powers" as receiver for state associations as it has for federal ones, and making applicable the same restrictions on judicial review). Thus we conclude that Congress clearly expected

creditors' suits against FSLIC as receiver to be heard and adjudicated in court.

*Morrison–Knudsen Co.,* at 1221.

The principal argument in the majority opinion and the cases cited in support thereof is that adjudication of creditors' claims would "restrain or affect" the exercise of the receivership powers by delaying the distribution of assets. This pragmatic approach is equally applicable to many other insolvency proceedings. The only thing special about the FSLIC is that depositors' savings are involved, but those are immediately reimbursed out of its insurance fund. *Morrison–Knudsen Co.,* at 1215.

There is no reason to believe that the scheme proposed by the FSLIC is any faster than the general course of insolvency. An initial adjudication of creditors' claims by a court is every bit as fast as the procedure approved by the majority opinion, whereby creditors' claims, including secured ones, must be adjudicated by the FSLIC, with an appeal to the FHLBB and then to the courts.

I agree with the summation in *Morrison–Knudsen Co.,* at 1217:

> The rock upon which FSLIC's arguments break is that a receiver's ordinary functions do not include adjudication. Judicial adjudication, to repeat, does not restrain or affect a receivership; it simply determines the existence and amount of claims that a receiver is to honor in its eventual distribution of assets. *Cf. Morris v. Jones,* 329 U.S. 545, 549, 67 S. Ct. 451, 454, 91 L. Ed. 488 (1947) ("The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have."). FSLIC's basic contention is that Congress intended the agency's receivership powers to go beyond those of an ordinary receiver. It has not established its case. [*North Miss. Sav. & Loan Ass'n v.*] *Hudspeth* [756 F.2d 1096 (5th Cir. 1985), *cert. denied,* 106 U.S. 790 (1986)] in effect permitted section 1464(d)(6)(C) to expand FSLIC's receivership authority. We decline to do so.

I therefore dissent.